**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| BIORESTORATIVE THERAPIES, INC., | Case No. 20-71757-reg |
| Debtor. | |

**AMENDED JOINT PLAN OF REORGANIZATION OF**
**BIORESTORATIVE THERAPIES, INC. AND AUCTUS FUND, LLC**

MURPHY & KING, P.C.
One Beacon Street
Boston, MA 02108
Harold B. Murphy, Esq.
William R. Moorman, Jr., Esq.
Email: wmoorman@murphyking.com
Telephone: (617) 423-0400
Facsimile: (617) 423-0498

(Counsel to Auctus Fund, LLC)

CERTILMAN BALIN ADLER & HYMAN, LLP
90 Merrick Avenue, 9th Floor
East Meadow, NY 11554
Richard McCord, Esq.
Robert D. Nosek, Esq.
Email: rnosek@certilmanbalin.com
Telephone: (516) 296-7000
Facsimile: (516) 296-7111

(Counsel to BioRestorative Therapies, Inc.)

Dated: August 7, 2020

7188610.1

BioRestorative Therapies, Inc., the debtor and debtor-in-possession in the Bankruptcy Case (as defined below), and Auctus Fund, LLC, propose the following joint plan of reorganization under Section 1121 of the United States Bankruptcy Code.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of the Plan, the following terms shall have the meanings specified in this Article I.  A capitalized term used but not defined in the Plan that is also used in the Bankruptcy Code shall have the meaning ascribed to that term in the Bankruptcy Code.  Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated.  The words "in the Plan," "the Plan," "hereto," "herein", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions the Plan.

**1.1**     "<u>Administrative Expense Claim</u>" shall mean a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including Professional Fee Claims.

**1.2**     "<u>Affiliate</u>" shall mean any Person that is an affiliate of the Debtor or the Reorganized Debtor under the Bankruptcy Code.

**1.3**     "<u>Allowed</u>" shall mean, with reference to any Claim or Equity Interest:

    (a)     a Claim that has been listed by the Debtor in its Schedules and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim or as to which a proof of claim or interest has been filed;

    (b)     a Claim or Equity Interest as to which a timely proof of claim or interest has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Final Order;

    (c)     a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code; or

    (d)     any Claim or Equity Interest expressly allowed under the Plan, pursuant to the Confirmation Order or pursuant to a Final Order of the Bankruptcy Court.  Equity Interests shall be deemed Allowed based on the records

maintained by the Debtor and the Debtor's transfer agent absent a Final Order of the Bankruptcy Court to the contrary.

**1.4** "Anti-dilution Right" shall mean any and all rights of any holder of an Equity Interest to anti-dilution protections, make whole protections, preemptive rights, subscription rights, subscription privileges or similar protections, rights or privileges, whether such Anti-dilution Right pertains or relates to any declaration of a dividend or other distribution payable in Equity Interests; subdivision of Equity Interests pursuant to a stock split or otherwise; combination of outstanding Equity Interests into a smaller number of shares pursuant to a reverse split or otherwise; reclassification of Equity Interests; reorganization of the Debtor; consolidation; merger; or otherwise.

**1.5** "Asset(s)" shall mean any real or personal property of any Debtor, whether tangible or intangible and wherever situated, together with the proceeds thereof.

**1.6** "Avoidance Actions" shall mean all causes of action under chapter 5 of the Bankruptcy Code.

**1.7** "Auctus" shall mean Auctus Fund, LLC.

**1.8** "Bankruptcy Case" shall mean the chapter 11 bankruptcy proceedings pending in the Bankruptcy Court under docket number 20-71757-reg.

**1.9** "Bankruptcy Code" shall mean Title 11 of the United States Code in effect in the Bankruptcy Case.

**1.10** "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Eastern District of New York in which the Bankruptcy Case is pending and, to the extent of any reference under 28 U.S.C. §157, the unit of such District Court specified pursuant to 28 U.S.C. §151.

**1.11** "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

**1.12** "Bar Date" shall mean July 7, 2020, the date fixed by order of the Bankruptcy Court as the last date by which Persons asserting certain Claims against the Debtor must file a proof of claim or interest or be forever barred from asserting a Claim against the Debtor or its property, from voting on the Plan and/or sharing in distributions under the Plan.

**1.13** "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Massachusetts.

**1.14** "Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

**1.15** "Causes of Action" shall mean, without limitation, any and all actions, causes of action, choses in action, defenses, liabilities, obligations, rights, suits, debts, sums of money,

damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise including, without limitation, (a) Avoidance Actions, (b) rights of setoff, counterclaim and recoupment, (c) claims and defenses on contracts or for breaches of duties imposed by law, (d) the right to object to claims or interests, (e) claims and defenses pursuant to Section 362 of the Bankruptcy Code, (f) claims and defenses for fraud, negligence, conversion, mistake, duress, indemnification and usury, (g) claims for unfair and deceptive business practices under applicable state and Federal law, (h) claims and defenses for unjust enrichment, and (i) claims for tax refunds..

**1.16** "Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (a) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.17** "Class" shall mean those classes designated in Article III of the Plan.

**1.18** "Collateral" shall mean any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

**1.19** "Common Stock" shall mean shares of common stock in the Reorganized Debtor.

**1.20** "Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Bankruptcy Case.

**1.21** "Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan, in form and substance reasonably acceptable to the Debtor and the Proponent.

**1.22** "Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or for which the event that would give rise to such a liability or debt has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

**1.23** "Convenience Class Claim" shall mean all Allowed General Unsecured Claims in an amount equal to or lesser than $30,000.00.

**1.24** "Convertible Plan Note" shall mean an unsecured convertible note, in a form to be provided in the Plan Supplement, issued by the Reorganized Debtor that contains, among other things, the following terms: (a) a maturity date thirty-six (36) months following the Effective Date, (b) an interest rate of five percent (5%) per annum, (c) the indebtedness shall be convertible at the option of the investor pursuant to applicable securities laws into shares of

Common Stock at a zero percent (0%) discount to the VWAP of the Common Stock over the five (5) trading days immediately preceding any conversion, (d) mandatory conversion of all outstanding indebtedness at such time as the Reorganized Debtor consummates the listing of its Common Stock on the NASDAQ Capital Markets or another senior exchange, with outstanding indebtedness to be converted on the same terms as provided to investors in connection with a public offering undertaken in connection with the senior exchange listing, and (e) other terms that are customarily included in similar convertible notes.

**1.25**    "Costs of Collection" shall mean all professional fees and costs, and other costs of collection, reasonably incurred, that are allowable under Section 506(b) of the Bankruptcy Code, in each case to the extent Allowed either by an agreement in writing between the Proponents and the holder of such Claim, or by a Final Order of the Bankruptcy Court.

**1.26**    "Covenants" shall mean the covenants attached as Exhibit 1.

**1.27**    "Cure Claim" shall mean the amount necessary to cure any defaults in an executory contract or unexpired lease so that such contract or lease may be assumed pursuant to Section 365(b)(1) of the Bankruptcy Code.

**1.28**    "Debtor" shall mean BioRestorative Therapies, Inc., including, from and after the Effective Date, in its capacity as Reorganized Debtor.

**1.29**    "Default" shall mean the occurrence after the Effective Date, and lapse of any applicable grace or cure period under the Plan, of an Event of Default.  No change in the rights of any parties under the Plan triggered by "Default" shall occur unless notice has been given in accordance with the Plan and any applicable grace or cure period has elapsed without the Event of Default being cured.

**1.30**    "Desmarais Note" shall mean the promissory note issued by the Debtor to John Desmarais in July of 2017, and amended on or about November 17, 2018, November 20, 2018, and December 17, 2019.

**1.31**    "DIP Obligation" shall mean all amounts, including principal, interest, costs and fees, owed to Auctus on account of the debtor-in-possession loans made to the Debtor by Auctus during the Bankruptcy Case.

**1.32**    "Disclosure Statement" shall mean the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

**1.33**    "Disputed Claim" shall mean:

(a)    if no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

(b)    if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy

- 5 -

Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

(c)       a Claim that is a Contingent or Unliquidated Claim.

**1.34**     "<u>Distribution Record Date</u>" shall mean fifteen (15) days prior to the first scheduled hearing on the approval of the Disclosure Statement or such other date established by the Bankruptcy Court.

**1.35**     "<u>Effective Date</u>" shall mean the first Business Day after the later to occur of (a) the fifteenth (15th) day following the Confirmation Date, provided that no stay pending appeal of the Confirmation Order has been granted, or (b) the date that all conditions precedent to the effectiveness of the Plan have been satisfied or waived by Auctus pursuant to Section 10.2 of the Plan.

**1.36**     "<u>Equity Interest</u>" shall mean the interest of any holder of any general or limited partnership interest in, membership interest in, or voting or non-voting shares of the Debtor, and all options, warrants, puts and/or rights, contractual or otherwise, to acquire, sell or subscribe to, at any time, any such interest, as such interests exist immediately prior to the Effective Date.

**1.37**     "<u>Estate(s)</u>" shall mean the estate created in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

**1.38**     "<u>Event of Default</u>" shall mean, subject to any applicable grace periods, one or more of the following events: (a) the failure to make when due any payment required under the Plan; (b) the breach of any Covenant or obligation owed to the holders of Allowed Claims under the Plan.

**1.39**     "<u>February 2020 Bridge Notes</u>" shall mean, collectively, the promissory notes issued by the Debtor to John Desmarais, the Tuxis Trust and/or Phoenix Cell Group Holdings, LLC, and dated February 20, 2020, and February 26, 2020.

**1.40**     "<u>Final Order</u>" shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (a) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending, or (b) if appeal, review, re-argument or certiorari of the order has been sought, the order has been affirmed or the request for review, re-argument or certiorari has been denied and the time to seek a further appeal, review, re-argument or certiorari has expired, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; <u>provided</u>, <u>however</u>, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

**1.41**     "<u>Financial Statements</u>" shall mean an income statement, balance sheet and statement of cash flows for the Debtor, substantially in the same form prepared by the Debtor prior to the Petition Date.

- 6 -

**1.42**     "Financing Amount" shall, (a) in the context of Section 4.3 of the Plan, mean an amount equal to the product of multiplying the amount of an Allowed General Unsecured Claim by .75, rounded up to the nearest thousand dollars and (b) in the context of Section 5.2 of the Plan, mean the amount of financing provided to the Reorganized Debtor.

**1.43**     "Financing Cap" shall mean an aggregate of all amounts provided to the Debtor pursuant to Sections 4.3(c)(ii) and 5.2 of the Plan equal to $15,000,000.00.

**1.44**     "General Unsecured Claim" shall mean a Claim that is: (a) not a Secured Claim, (b) not entitled to priority of payment under Section 507 of the Bankruptcy Code, and (c) not a Claim for an Equity Interest.

**1.45**     "Intercreditor Agreement" shall mean that certain Intercreditor Agreement, in a form to be provided in the Plan Supplement, by and among the Reorganized Debtor and such other creditors as are signatories thereto, pursuant to which, among other things, the parties provide for security interest priorities, rights of enforcement and rights of repayment.

**1.46**     "Internal Revenue Code" shall mean Title 26 of the United States Code, as amended from time to time.

**1.47**     "Insider" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code, provided that it shall not include any Debtor.

**1.48**     "Leak Out Restriction" shall mean, unless waived by the Reorganized Debtor, in its discretion, in one or more instances:

**(a)**     For shares of Common Stock received pursuant to Section 4.3(c)(i) of the Plan, a restriction prohibiting the holder of such stock and any of its Trading Affiliates, from selling, directly or indirectly, (including, without limitation, any sales, short sales, swaps or any derivative transactions that would be equivalent to any sales or short positions): (i) during the period between the Effective Date and 11:59 p.m. (Eastern Standard Time) on the thirtieth (30th) day following the Effective Date, more than thirty-three percent (33%) of the total amount of shares of Common Stock it received on the Effective Date; (ii) during the period between 12:01 a.m. (Eastern Standard Time) on the thirty-first (31st) day following the Effective Date and 11:59 p.m. (Eastern Standard Time) on the sixtieth (60th) day following the Effective Date, more than thirty-three percent (33%) of the total amount of shares of Common Stock it received on the Effective Date; and (iii) during the period between 12:01 a.m. (Eastern Standard Time) on the sixty-first (61st) day following the Effective Date and 11:59 p.m. (Eastern Standard Time) on the ninetieth (90th) day following the Effective Date, more than thirty-three percent (33%) of the total amount of shares of Common Stock it received on the Effective Date; and

**(b)**     For shares of Common Stock obtained through the conversion of a Convertible Plan Note received pursuant to Section 4.3(c)(ii)(1) of the Plan, a restriction prohibiting the holder of such stock and any of its Trading Affiliates, from selling, directly or indirectly, (including, without limitation, any sales, short sales, swaps

or any derivative transactions that would be equivalent to any sales or short positions): (i) during the period between the Effective Date and 11:59 p.m. (Eastern Standard Time) on the thirtieth (30th) day following the Effective Date, more than sixteen and six-tenths percent (16.6%) of the total amount of shares of Common Stock it received upon the conversion of such note; (ii) during the period between 12:01 a.m. (Eastern Standard Time) on the thirty-first (31st) day following the Effective Date and 11:59 p.m. (Eastern Standard Time) on the sixtieth (60th) day following the Effective Date, more than sixteen and six-tenths percent (16.6%) of the total amount of shares of Common Stock it received upon the conversion of such note; (iii) during the period between 12:01 a.m. (Eastern Standard Time) on the sixty-first (61st) day following the Effective Date and 11:59 p.m. (Eastern Standard Time) on the ninetieth (90th) day following the Effective Date, more than sixteen and six-tenths percent (16.6%) of the total amount of shares of Common Stock it received upon the conversion of such note; (iv) during the period between 12:01 a.m. (Eastern Standard Time) on the ninety-first (91st) day following the Effective Date and 11:59 p.m. (Eastern Standard Time) on the one-hundred and twentieth (120th) day following the Effective Date, more than sixteen and six-tenths percent (16.6%) of the total amount of shares of Common Stock it received upon the conversion of such note; (v) during the period between 12:01 a.m. (Eastern Standard Time) on the one-hundred and twenty-first (121st) day following the Effective Date and 11:59 p.m. (Eastern Standard Time) on the one-hundred and fiftieth (150th) day following the Effective Date, more than sixteen and six-tenths percent (16.6%) of the total amount of shares of Common Stock it received upon the conversion of such note; and (vi) during the period between 12:01 a.m. (Eastern Standard Time) on the one-hundred and fifty-first (151st) day following the Effective Date and 11:59 p.m. (Eastern Standard Time) on the one-hundred and eightieth (180th) day following the Effective Date, more than sixteen and six-tenths percent (16.6%) of the total amount of shares of Common Stock it received upon the conversion of such note.

**1.49**    "Lien" shall have the meanings set forth in Sections 101(36) and (37) of the Bankruptcy Code; provided that (a) a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien and (b) no lien shall be valid unless approved by a Final Order of the Bankruptcy Court or by agreement of the Debtor against whom the lien is asserted.

**1.50**    "Loan Documents" shall mean all documents evidencing a Secured Claim and/or the Lien securing such Claim, executed by the Debtor prior to the Petition Date, including, without limitation, notes, loan agreements, mortgages, security agreements, financing statements, guarantees, swap agreements, and such other documents executed in connection with such Secured Claim and/or Lien.

**1.51**    "Minimum Contribution" shall mean the amount of $3,000,000, less the Plan Costs and the DIP Obligation, to be made by Auctus and used to fund the Plan and the Reorganized Debtor's ongoing operations, in exchange for which Auctus shall receive a Secured Convertible Plan Note pursuant to Section 5.2 of the Plan.

7188610.1

**1.52**     "Net Proceeds" shall mean the gross proceeds of any sale, transfer or other liquidation of any of the Assets, including the prosecution of Causes of Action, less the aggregate of: (a) the costs and expenses of selling, transferring, prosecuting and/or liquidating the Assets, including, without limitation, professional fees and expenses related to the recovery and disposition of the Assets; (b) taxes (including capital gains taxes); (c) accrued and unpaid real estate taxes and municipal liens; and (d) closing costs and other usual and ordinary recording and/or settlement charges.

**1.53**     "Organization Documents" shall mean, as applicable, the Debtor's operating agreements, trust agreements, articles of incorporation, bylaws, corporate minute books and such other documents evidencing the Debtor's formation and/or operation in such jurisdictions in which the Debtor is authorized to conduct business.

**1.54**     "Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision.

**1.55**     "Petition Date" shall mean March 20, 2020.

**1.56**     "Plan" shall mean this *Amended Joint Plan of Reorganization of Biorestorative Therapies, Inc. and Auctus Fund, LLC*, including, without limitation, all exhibits, supplements, appendices and schedules to the Plan, either in their present form or as the same may be altered, amended or modified from time to time.

**1.57**     "Plan Costs" shall mean the costs incurred by Auctus to be a proponent of the Plan, including, without limitation, attorneys' fees and costs, consultants' fees and costs, and out of pocket costs and expenses.

**1.58**     "Plan Documents" shall mean the documents reasonably necessary to effectuate the Plan, including the Intercreditor Agreements, the Convertible Plan Notes and the Secured Convertible Plan Notes.

**1.59**     "Plan Lien" shall mean a Lien on substantially all assets of the Reorganized Debtor.

**1.60**     "Plan Supplement" shall mean the compilation of documents, agreements, papers, instruments and forms of documents associated with the Plan, including the Convertible Plan Note, the Secured Convertible Plan Note, and the Intercreditor Agreement relating to the Secured Convertible Plan Note, to be filed in connection with the confirmation of the Plan.

**1.61**     "Plan Warrants" shall mean (a) one (1) Common Stock purchase warrant per dollar of Financing Amount permitting the holder to purchase a certain amount of the Common Stock at an exercise price equal to $0.0002 per share with a cash call option permitting the Reorganized Debtor to redeem such warrant in the event that such warrant is registered in an effective registration statement for a price equal to the exercise price (subject to adjustment per the definitive documents) multiplied by the number of warrants outstanding; and (b) one (1) Common Stock purchase warrant per dollar of Financing Amount permitting the holder to purchase a certain amount of the Common Stock at an exercise price equal to $0.0004 per share.

The Plan Warrants shall include such anti-dilution provisions which are standard for common stock purchase warrants of this type, with the anti-dilution to be terminated upon the Reorganized Debtor's consummating the listing of its common stock on the NASDAQ Capital Markets or another senior exchange.

      **1.62**    "<u>Priority Claims</u>" shall mean all Claims, if any, entitled to priority under Section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

      **1.63**    "<u>Priority Tax Claims</u>" shall mean any Claim of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

      **1.64**    "<u>Professionals</u>" shall mean those Persons (a) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

      **1.65**    "<u>Professional Fee Claims</u>" shall mean the fees and expenses of Professionals under Sections 330, 331, or 503 of the Bankruptcy Code approved by an order of the Bankruptcy Court.

      **1.66**    "<u>Proponents</u>" shall mean Auctus and the Debtor.

      **1.67**    "<u>Pro Rata</u>" shall mean, when used with reference to a distribution of property under the Plan, proportionately so that with respect to a particular Allowed Claim, the ratio of (a)(1) the amount of property distributed on account of such Claim to (2) the amount of such Claim, is the same as the ratio of (b)(1) the amount of property distributed on account of all Allowed Claims of the Class in which such Claim is included to (2) the amount of all Allowed Claims in that Class.

      **1.68**    "<u>Reorganized Debtor</u>" shall mean the Debtor, from and after the Effective Date, as recapitalized, reconstituted and reorganized pursuant to the Plan and any associated documents.

      **1.69**    "<u>Schedules</u>" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

      **1.70**    "<u>Secured Claim</u>" shall any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

      **1.71**    "<u>Secured Convertible Plan Note</u>" shall mean a convertible note, in a form to be provided in the Plan Supplement, issued by the Reorganized Debtor, secured by the Plan Lien and subject to an Intercreditor Agreement, that contains, among other things, the following

terms: (a) a maturity date thirty-six (36) months following the Effective Date; (b) an interest rate of seven percent (7%) per annum; (c) the indebtedness shall be convertible at the option of the investor pursuant to applicable securities laws into shares of the Common Stock at a zero percent (0%) discount to the VWAP of the Common Stock over the five (5) trading days immediately preceding any conversion, (d) mandatory conversion of all outstanding indebtedness at such time as the Reorganized Debtor consummates the listing of the Common Stock on the NASDAQ Capital Markets or another senior exchange; outstanding indebtedness to be converted on the same terms as provided to investors in connection with a public offering undertaken in connection with the senior exchange listing; and (e) other terms that are customarily included in similar convertible notes.

     **1.72**    "<u>Trading Affiliate</u>" shall mean any Person acting on behalf of or pursuant to any holder of Common Stock which had knowledge of the transactions contemplated by the Plan, has or shares discretion relating to such holder's investments and trading or information concerning such holder's investments, or is subject to such holder's review or input concerning such Person's investments or trading

     **1.73**    "<u>Tuxis Note</u>" shall mean the promissory notes issued by the Debtor to the Tuxis Trust in June of 2016, and amended on or about November 17, 2018, November 20, 2018, and December 17, 2019.

     **1.74**    "<u>Voting Deadline</u>" shall mean the deadline for submitting ballots with respect to the Plan that is established by the Bankruptcy Court.

     **1.75**    "<u>VWAP</u>" shall mean the volume weighted average price for the Common Stock.

## ARTICLE II

## TREATMENT OF ALLOWED UNCLASSIFIED CLAIMS

     **2.1**    **Non-Classification.**

     As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims against the Debtor are not classified for the purposes of voting on, or receiving distributions under, the Plan. All such Claims are instead treated separately in accordance with the terms set forth in this Article II.

     **2.2**    **Administrative Expense Claims.**

     (a)    <u>General</u>.  Except for Professional Fee Claims and except as otherwise agreed to by the Debtor and the holder of an Allowed Administrative Expense Claim, each such holder shall be paid in full in Cash on the later of: (i) the date such Allowed Administrative Expense Claim becomes due in accordance with its terms; and (ii) the Effective Date.

     (b)    <u>U.S. Trustee's Fees</u>.  The outstanding fees due to the United States Trustee pursuant to 11 U.S.C. § 1930 shall be paid in full on or before the Effective Date.

(c)    <u>Professional Compensation and Expense Reimbursement Claims</u>.

(i)    Within thirty (30) days after the Effective Date, each Professional shall file a final application for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date. Any such application granted by the Bankruptcy Court shall be paid: (1) within fifteen days of the entry of the order of the Bankruptcy Court approving such application, unless a stay of the order approving the application is obtained; or (2) upon such other terms as may be mutually agreed upon between the Professional and the Debtor or Reorganized Debtor.

(ii)    All fees and expenses of Professionals for services rendered after the Effective Date shall be paid by the Reorganized Debtor upon receipt of reasonably detailed invoices in such amounts and on such terms as such Professional and the Reorganized Debtor may agree. No further order or authorization from the Bankruptcy Court shall be necessary to permit the Reorganized Debtor to pay the fees and expenses of Professionals for services rendered after the Effective Date.

(d)    <u>DIP Obligation</u>. The DIP Obligation shall, in accordance with Section 1145(a)(1) of the Bankruptcy Code, and pursuant to Section 5.2 of the Plan, be exchanged on or promptly after the Effective Date or a Secured Convertible Plan Note in an amount equal to one hundred percent (110%) of the DIP Obligation.

**2.3    Priority Tax Claims.**

Each holder of an Allowed Priority Tax Claim against the Debtor, if any, shall be paid, at the sole election of the Debtor, either: (a) upon such terms as may be agreed to between the Debtor and the holder of an Allowed Priority Tax Claim; (b) in full in Cash on the Effective Date; or (c) in installment payments of Cash commencing on the Effective Date and (i) of a total value as of the Effective Date equal to the Allowed amount of such Claim, (ii) over a period ending not later than five (5) years from the Petition Date, and (iii) in a manner not less favorable than the most favored General Unsecured Claim under the Plan.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The Claims against and Equity Interests in the Debtor are categorized below pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim is placed in a particular Class for the purpose of voting on the Plan, and only to the extent that such Claim is Allowed for voting purposes in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

7188610.1

**3.1**     **Claim and Equity Interest Categories.**

Claims against and Equity Interests in the Debtor have been classified as follows:

| Class | Designation | Impairment | Entitled to Vote |
|:---:|:---:|:---:|:---:|
| 1 | Secured Claims of John Desmarais, Tuxis Trust and/or Phoenix Cell Group Holdings, LLC | Impaired | Yes |
| 2 | Priority Claims | Unimpaired | No |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Convenience Class Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes |

**3.2**     **Elimination of Vacant Classes.**

Any Class of Claims or Equity Interests that does not contain, as of the Confirmation Date, a holder of an Allowed Claim or Equity Interest, or a holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1**     **Class 1 - Secured Claims of John Desmarais, Tuxis Trust and/or Phoenix Cell Group Holdings, LLC**

    (a)     <u>Classification</u>.  Class 1 shall consist of the Secured Claims against the Debtor held by John Desmarais, the Tuxis Trust and/or Phoenix Cell Group Holdings, LLC.

    (b)     <u>Impairment and Voting</u>.  Class 1 is impaired under the Plan and the holders of the Class 1 Secured Claims shall be entitled to vote to accept or reject the Plan.

    (c)     <u>Claim Treatment</u>.  In full and final satisfaction, settlement, discharge and release of the Allowed Class 1 Secured Claims, the holders of such Claims shall receive the following:

(i)     February 2020 Bridge Notes Allowed Secured Claims.  The holder of the Allowed Secured Claims arising from the February 2020 Bridge Notes shall receive, at the sole option of Auctus, one of the following:

(1)     Payment in full of such Claim by monthly payments of principal and interest, based on an interest rate of four and one quarter percent (4.25 %) per annum and a twenty (20) year amortization schedule, with all unpaid principal and interest due at the end of the sixtieth (60th) month following the Effective Date, provided that, the outstanding amount due may be pre-paid at any time without penalty, with such payments to commence on the first day of the first full month following the Effective Date;

(2)     Cash on the Effective Date equal to the amount of the Allowed Secured Claims arising from the February 2020 Bridge Notes;

(3)     A Secured Convertible Plan Note in the amount of the Allowed Secured Claims arising from the February 2020 Bridge Notes;

(4)     Such treatment as is agreed upon in writing between the Proponents and the holder of the Allowed Secured Claims arising from the February 2020 Bridge Notes; or

(5)     The treatment, as determined by the Bankruptcy Court, necessary to provide the holder of the Allowed Secured Claims arising from the February 2020 Bridge Notes with the indubitable equivalent of such Claims.

(ii)    Claims Secured by Avoidable Liens.  The Claims arising from the Desmarais Note and the Tuxis Note that are secured by Liens that were granted by the Debtor and/or perfected within one (1) year of the Petition Date: (1) shall be treated as Class 3 General Unsecured Claims, (2) shall not constitute Class 1 Allowed Secured Claims, and (3) the Liens securing such Claims shall be canceled, discharged and released pursuant to Article IX of the Plan.

(d)     Acceptance of Plan.  Notwithstanding Section 4.1(c)(i) of the Plan, if the holder of the Allowed Secured Claims arising from the February 2020 Bridge Notes irrevocably votes to accept the Plan, the holder of such Allowed Claim may elect to receive either the treatment set forth in Section 4.1(c)(i)(2) of the Plan, or the treatment set forth in Section 4.1(c)(i)(3) of the Plan.

7188610.1

(e)    <u>Covenants and Loan Documents</u>.  The Covenants shall apply to the Class 1 Allowed Secured Claim.  As of the Effective Date, the Loan Documents shall be deemed amended and restated, without further action, as necessary to reflect and incorporate the terms of the Plan.  The occurrence of the Effective Date shall render inoperative any terms, covenants, representations and warranties, and/or remedies contained in the Loan Documents that impose obligations upon the Debtor that are inconsistent with or more expansive than the terms of the Plan, and to the extent that there is any inconsistency between the Plan and any of the Loan Documents, the terms of the Plan shall control.

(f)    <u>Retention of Liens</u>.  To secure the payment of Class 1 Allowed Secured Claims and except as modified by the Plan, the holders of such Claims shall retain their Liens to the extent, validity and priority of such Liens as of the Petition Date.

(g)    <u>Discharge of Liens</u>.  Upon payment or satisfaction in full of an Allowed Class 1 Secured Claim: (i) all Liens securing such Allowed Secured Claim shall be deemed canceled, discharged and released, and (ii) the holder of such Allowed Secured Claim shall deliver to the Reorganized Debtor, within three (3) Business Days (or within such period agreed to by the Reorganized Debtor) of the payment in full of such Allowed Secured Claim, all UCC terminations, mortgage discharges and any other documents necessary to effect the discharge and release of the Liens that secured such Allowed Secured Claim.

(h)    <u>Reporting</u>.  Until the Allowed Class 1 Secured Claims are satisfied or paid in full, the Reorganized Debtor shall provide the holders of such Claims with the following reporting:

(i)    <u>Quarterly Report</u>.  Commencing on the sixtieth (60th) day after the end of the first full calendar quarter following the occurrence of the Effective Date occurs, and continuing on such date for each following calendar quarter, the Reorganized Debtor shall provide each holder of an Allowed Class 1 Secured Claim with the Reorganized Debtor's Financial Statements for the preceding calendar quarter.

(ii)    <u>Yearly Reports</u>.  On or before April 30 of each calendar year following the Effective Date, the Reorganized Debtor shall provide each holder of an Allowed Class 1 Secured Claim with Financial Statements for the preceding calendar year.

(iii)    <u>Confidentiality</u>.  Notwithstanding any freedom of information act or similar statute, the holders of the Class 1 Allowed Secured Claims and their representatives, agents and professionals shall keep all reports provided by the Reorganized Debtor strictly

confidential and shall be permitted to disclose such reports only to those of their representatives, agents and professionals specifically involved in evaluating the Allowed Class 1 Secured Claim who require such reports.  If the holder of an Allowed Class 1 Secured Claim or any of its representatives, agents or professionals become legally compelled to disclose any of the reports, such Claim holder shall consult with the Reorganized Debtor, provide the Reorganized Debtor with prompt written notice before any report is disclosed, and shall disclose only that portion of the report that is legally required to be disclosed.  The Reorganized Debtor may seek a protective order or other appropriate remedy to protect the confidentiality of the reports (including without limitation a narrowing of the scope of disclosure).  If the Reorganized Debtor does not obtain a protective order or other appropriate remedy, or if the Reorganized Debtor agrees to permit disclosure of a report, such Claim holder shall exercise good faith in cooperating with any efforts of the Reorganized Debtor to obtain appropriate assurances in writing that confidential treatment will be accorded the report.

(i)     <u>Remedies</u>.  Upon the occurrence of a Default as to an Allowed Class 1 Secured Claim, the holder of such Claim shall be entitled to enforce its rights under applicable law in a court of competent jurisdiction in the state of New York.

## 4.2     Class 2 – Priority Claims.

(a)     <u>Classification</u>.  Class 2 consists of the Priority Claims against the Debtor.

(b)     <u>Impairment and Voting</u>.  Class 2 is unimpaired under the Plan and the holders of Priority Claims are not entitled to vote to accept or reject the Plan.

(c)     <u>Claim Treatment</u>.  In full and final satisfaction, settlement, discharge and release of the Allowed Priority Claims, the holders of the Allowed Priority Claims shall be paid in full in Cash either: (i) in accordance with any pre-petition agreements between the holder of the Allowed Priority Claim and the Debtor, (ii) on the later to occur of the Effective Date or the date the Claim becomes an Allowed claim, or (iii) in accordance with any post-Petition Date agreement between the claimant and the Debtor.

## 4.3     Class 3 – General Unsecured Claims.

(a)     <u>Classification</u>.  Class 3 consists of the General Unsecured Claims against the Debtor.

(b)    <u>Impairment and Voting</u>.  Class 3 is impaired under the Plan and each holder of a General Unsecured Claim shall be entitled to vote to accept or reject the Plan.

(c)    <u>Claim Treatment</u>.  In full and final satisfaction, settlement, discharge and release of the Allowed General Unsecured Claims, each holder of an Allowed General Unsecured Claim shall receive, at the election of the holder of such Allowed Claim, on or promptly after the Effective Date, or such other date after the Effective Date as provided for herein, one of the following:

    (i)    In accordance with Section 1145(a)(1) of the Bankruptcy Code and subject to the Leak Out Restriction, shares of Common Stock in the Reorganized Debtor in an amount equal to the Allowed amount of the General Unsecured Claim multiplied by one-hundred (100); or

    (ii)    Provided that the holder of the Allowed General Unsecured Claim provides Cash to the Reorganized Debtor after the Effective Date equal to not less than the Financing Amount:

    (1) in accordance with Section 1145(a)(1) of the Bankruptcy Code, in exchange for its Allowed General Unsecured Claim, and subject to the Leak Out Restriction, a Convertible Plan Note equal to the amount of the Allowed General Unsecured Claim; and

    (2) pursuant to and in reliance on Section 4(a)(2) of the Securities Act of 1933, as amended, and Rule 506(d) promulgated thereunder, (a) a Secured Convertible Plan Note equal to the Financing Amount; and (b) one Plan Warrant for each dollar of Financing Amount.

(d)    <u>Election</u>.  In the event that the holder of an Allowed General Unsecured Claim does not, when voting on the Plan, elect which treatment it will receive under Section 4.3(c) of the Plan, such holder shall make the election prior to the Effective Date or such later date as may be agreed upon by Auctus, barring which such holder shall receive the treatment set forth in Section 4.3(c)(i) of the Plan.

(e)    <u>Execution of Documents</u>.  Any holder of a General Unsecured Claim who elects the treatment provided for in Section 4(c)(ii) of the Plan shall, prior to the hearing on confirmation of the Plan or such later date as may be approved by Auctus, execute (i) an investor questionnaire, (ii) a commitment, in the form of a subscription agreement or other agreement acceptable to Auctus, (ii) an escrow agreement and (iii) such other documents customarily required for such a financing and as may be reasonably requested by Auctus.  Such holder may be required to place the

Financing Amount in escrow prior to the hearing on confirmation of the Plan; provided, however, that both (i) the release of the Financing Amount from escrow and (ii) the purchase, sale and issuance of the Convertible Plan Note, the Secured Convertible Plan Note and the Plan Warrants shall not occur until after the occurrence of the Effective Date.

**4.4    Class 4 – Convenience Class Claims.**

(a)    <u>Classification</u>.  Class 4 consists of the Allowed Convenience Class Claims.

(b)    <u>Impairment and Voting</u>.  Class 4 is impaired under the Plan and each holder of a Convenience Class Claim shall be entitled to vote to accept or reject the Plan.

(c)    <u>Claim Treatment</u>.  In full and complete satisfaction, settlement, release and discharge, each holder of an Allowed Convenience Class Claim shall receive, in Cash, upon the later to occur of the Effective Date or the date such Claim becomes an Allowed Claim, the lesser of:

(i)    Twenty percent (20%) of the holder's Allowed Claim; or

(ii)    $6,000.00.

(d)    <u>Election</u>.  Any creditor with an Allowed Claim may elect to become an Allowed Convenience Class Claim by doing so on the ballot approved by the Bankruptcy Court not later than the deadline for voting on the Plan.

**4.5    Class 5 – Equity Interests.**

(a)    <u>Classification</u>.  Class 5 consists of the Equity Interests in the Debtor.

(b)    <u>Impairment and Voting</u>.  Class 5 is impaired under the Plan and the holders of Equity Interests shall be entitled to vote to accept or reject the Plan.

(c)    <u>Treatment</u>.  The holders of Allowed Equity Interests in the Debtor shall retain such interests, provided that: (i) all holders of Equity Interests shall have any and all of their Anti-dilution Rights extinguished and cancelled; (ii) all holders of Equity Interests shall have any and all of their rights to sell or put shares to the Debtor extinguished and cancelled; and (iii) if Class 3 and/or Class 4 vote to reject the Plan, the Equity Interests in the Debtor shall be cancelled.

**4.6    Reservation of Rights.**

The Proponents reserve the right to, among other things, (a) contest the right of the holder of any Claim to vote on the Plan, or designate the vote of the holder of any Claim, (b) contest the

7188610.1

right of the holder of any Claim to receive distributions under the Plan, (c) seek to subordinate any Claim for inequitable conduct or otherwise, and (d) seek to estimate any claim for any purposes under the Plan.

**ARTICLE V**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**5.1     Plan Implementation.**

The Plan and the Reorganized Debtor's post-Effective Date operations will be funded from the cash received in exchange for Secured Convertible Plan Notes, including the Minimum Contribution, and from any other financing as may be authorized pursuant to the Reorganized Debtor's Organization Documents or applicable law.  Upon the Effective Date, the Debtor is authorized to take all action permitted by its Organization Documents (as amended) and by the law, including, without limitation, to use its Cash and other Assets for all purposes provided for in the Plan and in its operations, to the borrow funds, to refinance their Secured obligations, to grant liens on their unencumbered Assets, and to sell its existing Assets.  Any Assets sold by the Reorganized Debtor to fund the Plan shall be transferred, assigned or otherwise conveyed to the buyer free and clear of all liens, claims, encumbrances and interests, with such liens, claims, encumbrances and interests to attach to the Net Proceeds of the sale to the same extent, priority and validity as is set forth in the Plan.

**5.2     Secured Convertible Plan Notes.**

Any entity that is an Accredited Investor, as that term is defined in 17 CFR § 230.501, that has provided all documents customarily required to demonstrate such status and that has executed a commitment, by way of a subscription agreement or other agreement acceptable to Auctus, may, pursuant to and in reliance on Section 4(a)(2) of the Securities Act of 1933, as amended, and Rule 506(d) promulgated thereunder, and subject to the approval of Auctus, provide financing to the Reorganized Debtor after the Effective Date, in increments of $1,000.00, in exchange for which the entity providing the financing shall receive a Secured Convertible Plan Note in the amount of such financing and one Plan Warrant for each dollar of such financing; provided that, in no event shall such financing exceed the Financing Cap absent the express consent of Auctus.  If the financing provided under Section 4.3(c)(ii) and this Section 5.2 of the Plan exceeds the Financing Cap, then Auctus shall have the right to limit the financing provided by any single holder of an Allowed General Unsecured Claim to an amount equal to seventy-five percent (75%) of such Allowed General Unsecured Claim.  Auctus shall have the right to choose which entities may provide financing under this Section 5.2 of the Plan.  In consideration of the Minimum Contribution, Auctus shall receive two or more Secured Convertible Plan Notes in an amount equal to one-hundred ten percent (110%) of the aggregate of the Minimum Contribution, the DIP Obligation and the Plan Costs.  The Secured Convertible Plan Note received by Auctus in exchange for the DIP Obligation in an amount equal to one hundred ten percent (110%) of the DIP Obligation shall be issued in accordance with Section 1145(a)(1) of the Bankruptcy Code.  Auctus shall also receive a Secured Convertible Plan Note for any amount of financing it provides to the Debtor in excess of the Minimum Contribution.

7188610.1

**5.3**     **Execution of Necessary Documents; Amendment of Documents.**

(a)     Confirmation of the Plan shall constitute authorization by the Bankruptcy Court for the Debtor and/or the Reorganized Debtor to enter into all documents, instruments and agreements necessary to effectuate the terms of the Plan.  The form and/or content of the documents, instruments and agreements necessary to effectuate the terms of the Plan shall be subject to the approval of the Proponents, in their sole discretion.

(b)     As of the Effective Date, all pre-Confirmation Date documents and agreements (whether written or oral) between the Debtor and any party shall be deemed to be amended as necessary to effectuate and conform to the terms of this Plan.  To the extent that there is any inconsistency between the Plan and any such documents and agreements, the terms of the Plan shall control.

(c)     All matters provided for in the Plan involving any corporate action required by the Debtor or Reorganized Debtor in connection with the Plan shall be deemed to have occurred, and shall be in effect, without any requirement of further action by the Reorganized Debtor, its agents, representatives, members, managers, officers, directors or Affiliates.

**5.4**     **Organization Documents and Good Standing.**

As of the Effective Date, the Debtor's Organization Documents shall be amended as necessary to effectuate the terms of the Plan and shall become the Organization Documents of the Reorganized Debtor, including, without limitation, to effectuate the issuance and authorization of Common Stock as needed to effectuate the Plan, permit post-Effective Date operations, permit the creation of incentive stock plans, and the raising of additional financing and capital.  To the extent that there is any inconsistency between the Plan and any of the Organization Documents, the terms of the Plan shall control.  To the extent the Debtor is not in compliance as of the Effective Date with any state or local law requirements necessary to remain as an organized legal entity in good standing and/or remain authorized as an organized legal entity to conduct business in any jurisdiction, the Debtor and/or the Reorganized Debtor, as the case may be, shall be deemed to be in compliance with any such laws if they comply with such laws within six months after the Effective Date.  To the extent necessary, the Debtor's Organization Documents shall be deemed amended to prohibit the issuance of nonvoting equity securities, and to provide, as to any classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.  As soon as practicable following the Effective Date, the Reorganized Debtor shall take such action as is necessary to bring it into compliance with all applicable Securities and Exchange Commission rules and regulations.

**5.5**     **Revesting of Property.**

Except as otherwise provided in the Plan, the Reorganized Debtor shall, as of the Effective Date, be vested with all of the Assets of the Debtor.

7188610.1

**5.6    Preservation and Resolution of Causes of Action.**

Except as provided in, and unless expressly waived, relinquished, exculpated, released, compromised or settled in the Plan, the Confirmation Order, any Final Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, the Reorganized Debtor will exclusively retain and may enforce, and the Debtor and the Reorganized Debtor expressly reserve and preserve for these purposes, in accordance with Sections 1123(a)(5)(A) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action that the Debtor or the Estate may hold against any person or entity.  No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to them by virtue of or in connection with the confirmation or consummation of the Plan.  After the Effective Date and except as otherwise provided in the Plan, the Reorganized Debtor is authorized, without further Bankruptcy Court order, to compromise, settle and/or otherwise dispose of any Causes of Action.

**5.7    Trustee Powers.**

Upon the Effective Date, the Reorganized Debtor shall be vested with the standing of and with all rights, powers and benefits afforded to a "trustee" under the Bankruptcy Code.

**5.8    Default.**

No event of default under the Plan or any Plan Documents shall occur unless, in the event of a breach of the Debtor's or the Reorganized Debtor's obligations under the Plan, the holder of the Allowed Claim asserting the default shall provide written notice of such breach to the Reorganized Debtor and such breach is not cured: (a) in the event of a breach that can be cured by the payment of a sum of money, within ten (10) Business Days of the Reorganized Debtor's receipt of such notice; and (b) for any other breach, within thirty (30) days of the Reorganized Debtor's receipt of such notice, provided that, if such non-monetary breach cannot reasonably be cured within such 30-day period and the Reorganized Debtor has commenced curing such breach and continue to cure such breach, the thirty (30) day period shall be extended for such time as is reasonably necessary to cure such breach.

## ARTICLE VI

## DISTRIBUTIONS ON CLAIMS AND RESOLUTION OF DISPUTED CLAIMS

**6.1    Method of Distributions Under the Plan.**

**(a)    In General.**  Subject to Bankruptcy Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan to be made by, or on behalf of, the Reorganized Debtor to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules unless the Reorganized Debtor has been notified in writing of a change of address as of the Distribution Record Date, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules.  The

Reorganized Debtor shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.

(b)      Form of Distributions.  Except as otherwise provided in the Plan, any payment of Cash made by, or on behalf of, the Reorganized Debtor pursuant to the Plan shall be made by check or, upon agreement of the parties, by wire transfer.

(c)      Distributions to be on Business Days.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)      Fractional Dollars.  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of $0.50 or less, and rounding up in the case of more than $0.50).

(e)      Distributions to Holders as of the Distribution Record Date.  As of the close of business on the Distribution Record Date, the claims register shall be closed.  The Reorganized Debtor shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date.  This Section 6.1(e) of the Plan shall not be deemed to bar or restrict the assignment of any Claim.

**6.2      Allowance of and Objections to Claims.**

(a)      Any holder of multiple Allowed Claims against the Debtor shall be treated under the Plan as though such holder had one Allowed Claim in the aggregate amount of such multiple Allowed Claims.

(b)      Except as otherwise specifically provided in the Plan or in an order of the Bankruptcy Court pursuant to Section 506(b) of the Bankruptcy Code, no interest shall accrue on or be paid on account of an Allowed Claim.

(c)      Prior to the Effective Date, any objections to Claims against the Debtor shall be prosecuted by the Debtor.  On and after the Effective Date and unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Reorganized Debtor and Auctus shall have the right to the exclusion of all others (except as to the Professionals' applications for allowances of compensation and reimbursement of expenses under Section 327 of the Bankruptcy Code and Rule 2014(a) of the Bankruptcy Rules) to make, file, prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court, objections to Claims. Notwithstanding any other provision of the Plan, the Reorganized Debtor shall not make any distribution on account of any Disputed Claim unless and until such Claim becomes Allowed.

(d)      After the Effective Date and except as otherwise provided in the Plan, the Reorganized Debtor is authorized, without further Bankruptcy Court order, to compromise, settle and/or otherwise dispose of any dispute regarding a Claim.

7188610.1

**6.3     Deadline for Objecting to Claims.**

Except as otherwise provided by order of the Bankruptcy Court, the Debtor, the Reorganized Debtor or Auctus, as the case may be, may file an objection to a Claim against the Debtor until the later of: (a) the date that such Claim becomes due and payable in accordance with its terms, or (b) ninety (90) days after the Effective Date.

**6.4     Estimation of Claims.**

The Debtor, the Reorganized Debtor or Auctus may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor or the Reorganized Debtor have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall have jurisdiction to estimate a Disputed Claim at any time and for any purpose, including, without limitation, for plan voting, feasibility, allowance and distribution purposes.  If the Bankruptcy Court estimates a Disputed Claim, such estimation shall not preclude the Debtor, the Reorganized Debtor or Auctus from pursuing any supplemental proceedings to object to any payment of such Claim.  All of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not exclusive remedies.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court or by agreement between the Debtor, the Reorganized Debtor and Auctus, and the holder of such Disputed Claim.

**6.5     Reversion of Unclaimed Checks.**

The amounts of any checks issued for distributions under the Plan that remain uncashed for a period of 180 days after the date of such distribution shall revert and be vested in the Reorganized Debtor free and clear of any claim or interest of any holder of a Claim under the Plan.

**6.6     Obligation to Provide Tax Documents.**

No Person entitled to a payment or distribution under the Plan shall receive such distribution or payment until the Person provides the Reorganized Debtor with: (a) a W-9 or similar federal or state tax form, and (b) such other tax forms as are reasonably requested by the Reorganized Debtor (collectively the "Tax Forms").  If any Person holding an Allowed Claim fails to provide a Tax Form to the Reorganized Debtor after two written requests for a Tax Form, such Person's Allowed Claim shall be disallowed and expunged without further order of the Bankruptcy Court.

**6.7     Deadline on Actions Required to Receive Distribution Under Plan.**

Except as otherwise provided for in this Plan, any condition to receiving a distribution under this Plan shall be satisfied no later than five (5) years after the entry of the Confirmation Order consistent with 11 U.S.C. § 1143.  Failure to take appropriate action to satisfy such condition may result in that entity not receiving a distribution under this Plan.

7188610.1

## ARTICLE VII

## VOTING ON THE PLAN AND CRAMDOWN

**7.1     Voting of Claims.**

Each holder of an Allowed Claim in an impaired Class that retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan.  Each holder of the foregoing Allowed Claims electing to vote shall do so on a duly executed and delivered ballot and in accordance with procedures set forth in the applicable order of the Bankruptcy Court establishing Plan voting procedures.

**7.2     Acceptance by Impaired Classes.**

An impaired class of Claims or Equity Interests shall have accepted the Plan if (a) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims or Allowed Equity Interests actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims or Allowed Equity Interests actually voting in such Class have voted to accept the Plan. If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

**7.3     Nonconsensual Confirmation.**

If any impaired Class entitled to vote does not accept the Plan by the requisite majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtor reserves the right (a) to seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code; and/or (b) to amend the Plan in accordance with Section 12.3 of the Plan.

## ARTICLE VIII

## EXECUTORY CONTRACTS, UNEXPIRED LEASES, POST-PETITION CONTRACTS AND RETIREE AND COMPENSATION BENEFITS

**8.1     Assumption of Executory Contracts and Unexpired Leases.**

Pursuant to Sections 1123(b)(2) and 365(a) of the Bankruptcy Code, any executory contract or unexpired lease (excluding insurance policies) that (i) has not expired by its own terms on or prior to the Confirmation Date, (ii) has not been assumed, assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (iii) is not the subject of a motion to assume or reject which is pending at the time of the Confirmation Date, or (iv) is not designated by Auctus as being an executory contract or unexpired lease to be rejected at the time of confirmation of this Plan, shall be deemed assumed on the Effective Date.

The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumption pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

**8.2     Payments Related to The Assumption of Executory Contracts And Unexpired Leases.**

(a)     <u>Payment of Claims Arising From Assumed Contracts And Leases</u>.  Any Allowed Claims arising from the assumption of an executory contract or unexpired lease will receive, in full and complete satisfaction, settlement, release and discharge of such Claims, payment in the ordinary course of business as and when such Allowed Claims become due pursuant to such executory contract or unexpired lease.

(b)     <u>Disputed Claims and Bar Date</u>.  If there is a dispute regarding (i) the amount of any claim arising from the assumption or rejection of an executory contract or unexpired lease, (ii) the ability of the Debtor or any assignee to provide "adequate assurance of future performance," within the meaning of Section 365 of the Bankruptcy Code, under a contract or lease to be assumed, or (iii) any other matter pertaining to the assumption or assumption and assignment of any contract or lease, the payment of any Claim related to the foregoing will be made following entry of a Final Order resolving the dispute and approving the assumption.

**8.3     Rejection Damage Claims.**

If the rejection of an executory contract or unexpired lease by the Debtor results in a Claim by the other party or parties to such contract or lease, any claim for damages, if not previously evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, the Reorganized Debtor and their respective properties, agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Proponents on or before thirty (30) days following the later to occur of: (a) the rejection of such executory contract or unexpired lease, and (b) the Confirmation Date. Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed will be treated as General Unsecured Claims subject to the provisions of the Plan.  The Debtor, the Reorganized Debtor or Auctus shall have the right to object to any such Claim for rejection damages in accordance with the Plan.

## ARTICLE IX

## RELEASE AND DISCHARGE OF CLAIMS

**9.1     Discharge.**

Except as otherwise expressly provided in Section 1141 of the Bankruptcy Code or the Plan, the distributions made pursuant to and in accordance with the applicable terms and conditions of the Plan are in full and final discharge as against the Debtor and the Reorganized Debtor of any debt or obligation of the Debtor that arose before the Effective Date, and any debt of the Debtor of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all Claims against the Debtor or the Estate of any nature, including, without limitation, any setoff claims and/or any interest accrued on any Claim from and after the Petition Date, whether

or not: (a) a proof of claim based on such debt, obligation or Equity Interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (b) such Claim is Allowed under Section 502 of the Bankruptcy Code, or (c) the holder of such Claim has accepted the Plan.

**9.2     Injunction Relating to the Plan.**

As of the Effective Date, all Persons are hereby permanently enjoined from commencing, continuing or enforcing in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor, the Estate or the Reorganized Debtor, on account of, or respecting any Claims, debts, rights, obligations, Causes of Action or liabilities discharged pursuant to the Plan, except to the extent expressly permitted under the Plan.

**9.3     Releases.**

**(a)     DEBTOR RELEASES.  NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR, THE DEBTOR AND ITS CURRENT AND FORMER AFFILIATES AND REPRENTATIVES AND THE ESTATE SHALL BE DEEMED TO HAVE PROVIDED A FULL, COMPLETE, UNCONDITIONAL AND IRREVOCABLE RELEASE TO (i) THE DEBTOR'S CURRENT OFFICERS, DIRECTORS, AGENTS AND PROFESSIONALS AND (ii) AUCTUS FUNDS, LLC, AND ITS CURRENT OFFICERS, DIRECTORS, AGENTS AND PROFESSIONALS (EACH, A "RELEASED PARTY," AND COLLECTIVELY, THE "RELEASED PARTIES") AND EACH SUCH RELEASED PARTY SO RELEASED SHALL BE DEEMED RELEASED BY THE DEBTOR AND ITS AFFILIATE AND REPRESENTATIVES AND THE ESTATE FROM ANY AND ALL CLAIMS, CAUSES OF ACTION AND ANY OTHER DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, REMEDIES AND LIABILITIES WHATSOEVER, WHETHER ACCRUED OR UNACCRUED, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING BEFORE THE EFFECTIVE DATE, AS OF THE EFFECTIVE DATE OR ARISING THEREAFTER, IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF STATUTES (INCLUDING BUT NOT LIMITED TO THE FEDERAL OR STATE SECURITIES LAWS), OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY TO THE DEBTOR, INCLUDING, WITHOUT LIMITATION, THOSE THAT THE DEBTOR WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT OR THAT ANY HOLDER OF A CLAIM OR EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT FOR OR ON BEHALF OF THE DEBTOR OR THE ESTATE, INCLUDING WITHOUT LIMITATION THOSE IN ANY WAY RELATED TO THE CHAPTER 11 CASE OR THE PLAN; PROVIDED, HOWEVER, THAT THE FOREGOING RELEASE SHALL NOT PROHIBIT THE DEBTOR OR THE ESTATE FROM ASSERTING ANY AND ALL DEFENSES AND COUNTERCLAIMS IN RESPECT OF ANY DISPUTED CLAIM ASSERTED BY ANY RELEASED PARTIES; PROVIDED FURTHER, THAT THE**

7188610.1

**FOREGOING PROVISIONS OF THIS SECTION 6.19(a) SHALL HAVE NO EFFECT ON THE LIABILITY OF THE DEBTOR'S CURRENT DIRECTORS AND OFFICERS, THE DEBTOR'S DIRECTORS AND OFFICERS THAT SERVED IN SUCH CAPACITY AS OF THE PETITION DATE, THE DEBTOR'S PROFESSIONALS, AND THE REPRESENTATIVES OF EACH OF THE FOREGOING THAT RESULTS FROM ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. NOTWITHSTANDING THE FOREGOING, THE DEBTOR DOES NOT RELEASE ANY AVOIDANCE ACTIONS TO AVOID ANY PERFECTION OF ANY SECURITY INTERESTS IN AND/OR LIENS AGAINST ANY OF THE DEBTOR'S TANGILBE AND/OR INTANGIBLE PROPERTY GRANTED BY THE DEBTOR WHICH PERFECTION ALLEGEDLY OCCURRED WITHIN ONE YEAR OF THE PETITION DATE.**

**(b)    CREDITOR RELEASES.  EXCEPT AS OTHERWISE SET FORTH IN THE PLAN, AS OF THE EFFECTIVE DATE, IN CONSIDERATION FOR, AMONG OTHER THINGS, THE OBLIGATIONS OF THE DEBTOR UNDER THE PLAN AND OTHER CONTRACTS, INSTRUMENTS, RELEASES, AGREEMENTS OR DOCUMENTS TO BE ENTERED INTO OR DELIVERED IN CONNECTION WITH THE PLAN, (A) EACH HOLDER OF A CLAIM OR INTEREST THAT VOTES IN FAVOR OF THE PLAN AND (B) TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTERPRETED SUBSEQUENT TO THE EFFECTIVE DATE, EACH PERSON THAT HAS HELD, HOLDS OR MAY HOLD A CLAIM OR EQUITY INTEREST OR AT ANY TIME WAS A CREDITOR OR EQUITY HOLDER OF THE DEBTOR AND THAT DOES NOT VOTE ON THE PLAN OR VOTES AGAINST THE PLAN, IN EACH CASE WILL BE DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, RIGHTS, CAUSES OF ACTION AND LIABILITIES (OTHER THAN THE RIGHT TO ENFORCE THE REORGANIZED DEBTOR'S OBLIGATIONS UNDER THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, AGREEMENTS AND DOCUMENTS DELIVERED, OR THAT REMAIN IN EFFECT, UNDER THE PLAN), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING IN LAW, EQUITY OR OTHERWISE, THAT ARE BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO THE DEBTOR, THE BANKRUPTCY CASE OR THE PLAN THAT SUCH ENTITY HAS, HAD OR MAY HAVE AGAINST THE DEBTOR, THE ESTATE, THE ESTATE'S ASSETS, THE REORGANIZED DEBTOR AND/OR THE REORGANIZED DEBTOR'S ASSETS.**

**9.4    Cancellation of Existing Indebtedness and Liens.**

Except as is otherwise provided in the Plan, on the Effective Date: (a) all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtor, together with any

and all Liens securing same, including without limitation any rights of setoff, shall be canceled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, (b) the obligations of the Debtor thereunder shall be deemed cancelled, discharged and released, and (c) all of the right, title and interest of any holder of such mortgages, deeds of trust, liens or other security interests, including any rights to any collateral thereunder, will revert to the Reorganized Debtor.  To the extent deemed necessary or advisable by the Proponents, any holder of a Claim shall promptly provide the Reorganized Debtor with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing such Claim.

### 9.5    Exculpation.

As of the Effective Date, the Debtor, its directors, officers, employees, agents and professionals (including professional firms and individuals within such firms) and Auctus, its directors, officers, employees, agents and professionals (including professional firms and individuals within such firms) shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.  To the fullest extent permitted by Section 1125(e) of the Bankruptcy Code, the Debtor, its directors, trustees, officers, employees, and professionals (including professional firms and individuals within such firms), and Auctus, its directors, officers, employees, agents and professionals (including professional firms and individuals within such firms) shall not have or incur any liability to any holder of any Claim against or Interest in or any other Person for any act or omission taken or not taken in good faith in connection with, or arising out of, the Chapter 11 Case, the Disclosure Statement, the Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken during the Chapter 11 Case, including, without limiting the generality of the foregoing, all retentions, motions and applications, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, the solicitation of votes for and the pursuit of confirmation of the Plan, and, without limitation, the steps taken to effectuate the transactions described in Article 6.8 of the Plan, except for acts or omissions constituting fraud, willful misconduct or gross negligence as determined by a Final Order; and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### 9.6    Setoffs.

Except as otherwise provided in the Plan, nothing contained in the Plan shall constitute a waiver or release by the Debtor, the Estate and/or the Reorganized Debtor of any rights of setoff each may have against any Person.

## ARTICLE X

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN

**10.1    Conditions Precedent to Effectiveness.**

Subject to Section 10.2 of the Plan, the following are conditions precedent to the occurrence of the Effective Date:

(a)    The Confirmation Order, in form and substance reasonably acceptable to Auctus shall have been entered by the Bankruptcy Court and shall not be subject to any stay;

(b)    The Debtor shall have received commitments for new financing, not including the Minimum Contribution, pursuant to Sections 4.3(c)(ii) and/or 5.2 of the Plan in an amount of not less than $2,000,000.00, to be funded as soon as practicable following the Effective Date;

(c)    The assumption of the Debtor's executory contracts and unexpired leases, on terms and conditions (including the modification of such agreements) acceptable to Auctus in its sole discretion, shall have been approved by an order of the Bankruptcy Court; and

(d)    The Confirmation Order shall have become a Final Order.

**10.2    Waiver of Conditions.**

Except for the condition set forth in Section 10.1(a) of the Plan, Auctus may, in its sole discretion, waive the conditions precedent to the effectiveness of the Plan set forth in Section 10.1 by filing a notice of waiver with the Bankruptcy Court.  The failure to satisfy or waive any condition precedent to the occurrence of the Effective Date may be asserted by Auctus regardless of the circumstances giving rise to the failure of such condition to be satisfied.

**10.3    Effect of Non-occurrence of Conditions to the Effective Date.**

If the Effective Date has not occurred within six (6) months after the Confirmation Date, then the Plan shall be null and void in all respects and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor, or (b) prejudice in any manner the rights of the Debtor or any other Person or constitute an admission, acknowledgement, offer or undertaking by the Debtor or any other Person.

**10.4    Notice of Occurrence of Effective Date.**

As soon as practicable following the Effective Date, the Debtor shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date, that specifies, among other things, the date on which the Effective Date occurred.

# ARTICLE XI

# RETENTION OF JURISDICTION

**11.1**     From and after the occurrence of the Effective Date, the Bankruptcy Court shall have jurisdiction over the matters arising out of, and related to, the Bankruptcy Case and the Plan, as legally permissible, pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code including, without limitation:

(a)     To hear and determine any and all objections to the allowance, disallowance, determination, liquidation, classification or estimation of any Claims or Equity Interests or any controversies as to the priority and classification of any Claims (or any security with respect thereto) or Equity Interests or to estimate any Disputed Claim;

(b)     To hear and determine any and all applications by Professionals for compensation and reimbursement of expenses, authorized pursuant to the Plan or the Bankruptcy Code;

(c)     To hear and determine any and all applications (whether or not pending at or on the Confirmation Date) related to the rejection, assumption or assumption and assignment of executory contracts and unexpired leases to which the Debtor is a party, and to hear, determine and allow any Claims resulting therefrom;

(d)     To enforce and adjudicate the provisions of the Plan subject to the terms of the Plan;

(e)     To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(f)     To determine any Claim or liability to a governmental unit which may be asserted as a result of the transactions contemplated in the Plan;

(g)     To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(h)     To determine such other matters as may be necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(i)     To resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, enforcement or vacatur of the Plan or any Person's obligations incurred in connection with the Plan;

(j)     To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan, except as otherwise provided herein;

7188610.1

(k)     To determine any other matters that may arise in connection with the Plan, the Disclosure Statement, the Confirmation Order or any other contract, instrument, release, indenture or other agreement or document created in connection with the foregoing;

(l)     To resolve any cases, controversies, suits or disputes with respect to releases, injunctions and other provisions contained in Article IX hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions or other provisions;

(m)     To hear and determine any Claims, rights, demands and Causes of Action arising prior to the Effective Date preserved pursuant to the Plan, including, but not limited to, any Causes of Action against John M. Desmarais and/or Tuxis Trust to avoid the Debtor's granting to John M. Desmarais and/or Tuxis Trust of any security interest in and/or lien against any of the Debtor's tangible and/or intangible personal property allegedly securing the Tuxis Note and/or the Desmarais Note; and

(n)     To enter an order and/or final decree concluding the Bankruptcy Case.

# ARTICLE XII

## MISCELLANEOUS

### 12.1    Continuation of Injunctions or Stays Until Effective Date.

All injunctions or stays provided for in the Bankruptcy Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, except as otherwise ordered by the Bankruptcy Court upon appropriate motion and with appropriate notice.

### 12.2    Exemption from Transfer Taxes.

In accordance with Section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by the Plan, (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with the Plan, and the issuance, renewal, modification or securing of indebtedness by such means, and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.  Each recorder of deeds or similar official for any county, city or governmental unit in which any instrument under the Plan is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument,

7188610.1

without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

### 12.3    Amendment or Modification of the Plan.

Alterations, amendments or modifications of the Plan may be proposed in writing by Auctus at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Proponents shall have complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. The Debtor or the Reorganized Debtor may, without notice to holders of Claims (other than the Lenders) insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit to the Plan or in any Plan Document.

### 12.4    Severability.

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Proponents (and subject to reasonable notice to the Lenders and an opportunity to object to the extent that the applicable term or provision of the Plan affects the Lenders), alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

### 12.5    Revocation or Withdrawal of the Plan.

Auctus reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Proponents revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.

### 12.6    Binding Effect.

The rights, duties and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

7188610.1

**12.7    Notices.**

All notices, requests and demands to or upon the Debtor, the Reorganized Debtor or Auctus shall only be effective if in writing and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

If to the Debtor or the Reorganized Debtor:

      40 Marcus Drive, Suite One
      Melville, NY 11747
      Phone:  (631) 760-8400

      Attention: Mark Weinreb

With copies to:

      Certilman Balin Adler & Hyman, LLP
      Richard McCord, Esq.
      Robert D. Nosek, Esq.
      90 Merrick Avenue, 9th Floor
      East Meadow, NY 11554
      Telephone: (516) 296-7000
      Email: rnosek@certilmanbalin.com

If to Auctus:

      Auctus Fund LLC
      545 Boylston St.
      Boston, MA 02116
      Phone:  (617) 209-6232

      Attention: Mr. Al Sollami

With copies to:

      Murphy & King, Professional Corporation
      One Beacon Street
      Boston, MA 02108
      Harold B. Murphy, Esq.
      William R. Moorman, Jr., Esq.
      Telephone: (617) 423-0400
      E-mail: hmurphy@murphyking.com
      E-mail: wmoorman@murphyking.com

7188610.1

**12.8    Governing Law.**

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

**12.9    Withholding and Reporting Requirements.**

In connection with the consummation of the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**12.10    Post-Confirmation Fees, Final Decree.**

The Reorganized Debtor will be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  After confirmation, the Reorganized Debtor will serve the United States Trustee with a monthly financial report for each month (or portion thereof) these bankruptcy cases remain open.  The Reorganized Debtor may request that these bankruptcy cases be closed notwithstanding that there may be proceedings relating to Disputed Claims still pending.  The monthly financial report shall include the following:

(a)    A statement of all disbursements made during the course of the quarter, whether or not pursuant to the Plan;

(b)    A summary, by class, of amounts distributed or property transferred to each recipient under the plan, and an explanation of the failure to make any distributions or transfers of property under the Plan;

(c)    The Reorganized Debtor's projections as to their continuing ability to comply with the terms of the Plan;

(d)    A description of any other factors which may materially affect the Reorganized Debtor's ability to consummate the Plan; and

(e)    An estimated date when an application for final decree will be filed with the court (in the case of the final monthly report, the date the decree was filed).

**12.11    Headings.**

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**12.12  Inconsistency.**

In the event of any inconsistency between the Plan and the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

BioRestorative Therapies, Inc.,                    Auctus Fund, LLC,


/s/Mark Weinreb_____            /s/Al Sollami_____
By: Mark Weinreb                                        By: Al Sollami
Its:  President                                            Its: Managing Member

Counsel for BioRestorative Therapies,          Counsel for Auctus Fund, LLC,
Inc.,



/s/Robert D. Nosek_____        /s/William R. Moorman, Jr._____
Richard McCord, Esq.                                 Harold B. Murphy, Esq.
Robert D. Nosek, Esq.                                 William R. Moorman, Jr., Esq.
CERTILMAN BALIN ADLER &               MURPHY& KING, P.C.
HYMAN, LLP                                              One Beacon Street
90 Merrick Avenue, 9th Floor                     Boston, MA  02108
East Meadow, NY 11554                              Telephone:  (617) 423-0400
Telephone: (516) 296-7000                         Facsimile:   (617) 423-0498
Facsimile:  (516) 296-7111                         Email:  wmoorman@murphyking.com
Email: rnosek@certilmanbalin.com

Dated:  August 7, 2020

7188610.1