**CERTILMAN BALIN ADLER & HYMAN, LLP**  **Hearing Date: September 10, 2020**
Counsel to the Debtor and Debtor in Possession  At:  11:30 a.m.
Richard J. McCord, Esq.
Robert D. Nosek, Esq.
90 Merrick Avenue
East Meadow, NY 11554
Phone: (516) 296-7000
Fax: (516) 296-7111

-and-

**MURPHY& KING, P.C.**
Counsel to Auctus Fund, LLC
Harold B. Murphy, Esq.
William R. Moorman, Jr., Esq.
D. Ethan Jeffery, Esq.
One Beacon Street
Boston, MA  02108
Phone: (617) 423-0400
Fax: (617) 423-0498

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

BIORESTORATIVE THERAPIES, INC.,

                  Debtor.
-----------------------------------------------------------x

Chapter 11

Case No.: 20-71757-reg

## JOINT REPLY IN RESPONSE TO THE OBJECTION OF JOHN M. DESMARAIS AND TUXIS TRUST TO CONFIRMATION OF AMENDED JOINT PLAN OF REORGANIZATION OF <u>BIORESTORATIVE THERAPEIS, INC. AND AUCTUS FUND, LLC</u>

BioRestorative Therapies, Inc. (the "<u>Debtor</u>"), the debtor and debtor-in-possession in the above-captioned case, and Auctus Fund, LLC ("<u>Auctus</u>" and together with the Debtor, the "<u>Proponents</u>"), for their joint reply to the *Objection of John M. Desmarais and Tuxis Trust to Confirmation of Amended Joint Plan of Reorganization of BioRestorative Therapies, Inc. and Auctus Fund, LLC* [ECF Doc. No. 198] (the "<u>Objection</u>")[1], respectfully state as follows:

---

[1] Capitalized terms not otherwise defined herein shall have the same definitions as assigned to them in the Amended Plan.

## PRELIMINARY STATEMENT

1. The hearing on confirmation of the *Amended Joint Plan of Reorganization of BioRestorative Therapies, Inc. and Auctus Fund, LLC* (the "Amended Plan") is scheduled for September 10, 2020 at 10:00 a.m.

2. John Desmarais ("Desmarais") and Tuxis Trust ("Tuxis"), an affiliate of Desmarais (collectively, the "Desmarais Parties") are alleged secured creditors of the Debtor, with Desmarais having filed proofs of claim in the amounts of $356,836.03 and $245,191.78 and Tuxis having filed a proof of claim in the amount of $753,835.62. The Debtor has filed an adversary proceeding in this Court against Desmarais and Tuxis, seeking avoidance as preferential transfers the security interests which allegedly secure the $245,191.78 and $753,835.62 claims.

3. At the inception of the Debtor's case, Desmarais, a former Director of the Debtor, unsuccessfully sought to acquire all of the Debtor's assets through an expedited Section 363 sale process. The Desmarais Parties are now the sole objector to confirmation of the Amended Plan and are the only parties that voted against the Amended Plan, with the Debtor and Auctus having received overwhelming support for the Amended Plan from all other creditors and stockholders who voted on the Amended Plan. The Desmarais Parties submitted their ballots as Class 1 Secured Creditors under the Amended Plan and have filed their Objection as Class 1 Secured Creditors. The classes of general unsecured creditors (Class 3), convenience class creditors (Class 4) and equity interests (Class 5) have voted unanimously in support of the Amended Plan. Four Class 3 creditors (other than Auctus) have committed to providing funding to the Reorganized Debtor in the aggregate amount of at least $286,844.97. That amount could increase and the Reorganized Debtor will be actively seeking additional funding. Auctus has

agreed to waive the condition in the Amended Plan that third parties commit to providing at least $2 million in funding and has itself committed to providing (i) $3.5 million in new funding to the Reorganized Debtor upon the occurrence of the Effective Date, plus (ii) subject only to the Reorganized Debtor becoming current with its SEC filings and other customary conditions, additional new funding as needed in an amount equal to another $3.5 million, less the DIP Obligations.

4. The Debtor is a development stage biopharmaceutical company which, by its nature, involves risk and a certain level of speculation because the success of such companies at this point in their life cycle is entirely dependent on developing and proving that the therapies that they are developing actually work and are safe, and are ultimately approved by an appropriate governmental unit. It is unquestionable that pharmaceutical products are expensive to develop, test and bring to market. Desmarais knows this. Yet, contrary to the desires of all other creditors and shareholders of the Debtor, he apparently desires to see the Debtor liquidated as opposed to reorganized.

5. The Desmarais Parties have essentially raised the following objections to confirmation of the Amended Plan:

      a. The Amended Plan allegedly violates 11 U.S.C. § 1129(b)(2)(A)(i)(I) by not providing for the Desmarais Parties, as holders of Class 1 Secured Claims, to retain their alleged pre-petition liens on the Debtor's assets "to the extent of the allowed amount of such claims;"

      b. The Amended Plan allegedly violates 11 U.S.C. § 1129(b)(2)(A)(i)(II) because the Proponents have allegedly offered no evidence of the propriety of the interest rate to be paid on account of any allowed secured claim of the Desmarais Parties;

      c. The Amended Plan allegedly violates 11 U.S.C. § 1129(a)(11) because the Proponents allegedly cannot demonstrate that confirmation of the Amended Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor;

      d. The Amended Plan allegedly violates 11 U.S.C. § 1129(a)(3) because the Secured Convertible Plan Notes to be issued to Auctus and other third parties providing funding to the Reorganized Debtor do not contain the Leak Out Restriction; and

      e. The Amended Plan allegedly provides for improper releases.

### I. The Proponents have Satisfied 11 U.S.C. §§ 1129(b)(2)(A)(i)(I) and (II)

6. The Amended Plan (i) provides that, except as modified by the Amended Plan, the Desmarais Parties shall, on account of any allowed secured claim, retain their liens to the extent, validity and priority of such liens as of the Petition Date and (ii) further provides for five potential alternative treatments for the payment of the secured claims of the Desmarais Parties. At present, Desmarais holds a secured claim in the amount of $356,836.03 that has not been the subject of any objection, and an alleged secured claim in the amount of $245,191.78 that is subject to avoidance pursuant to the pending Adversary Proceeding. Tuxis Trust holds an alleged secured claim in the amount of $753,835.62 that is subject to avoidance pursuant to the pending Adversary Proceeding. As acknowledged by the Desmarais Parties, their alleged secured claims are presently subordinate to the DIP Obligation. The intent of the Proponents under the Amended Plan is that, to the extent the Desmarais Parties are ultimately determined to hold secured claims, their liens will remain subject only to an amount equal to the DIP Obligation. To the extent that needs to be made clear, the Proponents will incorporate an appropriate provision in the Order confirming the Amended Plan.

7. Of the five possible alternative payment treatments, the Proponents will either (i) pay the allowed secured claims of the Desmarais Parties in full if and to the extent they are ultimately allowed; (ii) make monthly payments of principal and interest based on an interest rate of 4.25% per annum and a 20 year amortization, with a balloon payment due at the end of five

years; or (iii) provide the Desmarais Parties with the indubitable equivalent of their allowed claims as may be determined by this Court. The Proponents contend that all three such alternative treatments are appropriate under the Bankruptcy Code and that, if the Proponents and the Desmarais Parties cannot agree on the treatment, this Court should hold an evidentiary hearing after the claims have been allowed or disallowed as secured claims. Because the Reorganized Debtor will have sufficient funds to provide for whatever treatment may ultimately be agreed upon or ordered, the Amended Plan should be confirmed with the final determination of the treatment of the claims of the Desmarais Parties to be decided post-confirmation.[2]

## II. The Amended Plan is Feasible

8. The Desmarais Parties claim that the Amended Plan is not feasible. Such contention is not true for various reasons,[3] including without limitation:

> a. As stated above, to date, four creditors (other than Auctus) have committed to providing funding to the Reorganized Debtor in the amount of at least $286,844.97 to fund the Debtor's operations after the Effective Date of the Plan. That amount could increase and the Reorganized Debtor will be actively seeking additional funding. Auctus has agreed to waive the condition in the Amended Plan that third parties commit to providing at least $2 million in funding and has itself committed to providing $3.5 million in new funding to the Reorganized Debtor upon the occurrence of the Effective Date, plus subject only to the Reorganized Debtor becoming current with its SEC filings and other customary conditions, additional new funding as needed in an amount equal to another $3.5 million, less the DIP Obligation. Based on these commitments alone, the Debtor projects that it has sufficient funds to operate for no less than one year under any and all circumstances.

---

[2] The Desmarais Parties do not raise an objection with respect to the proposed 20 year amortization or the five year balloon payment. They only take issue with the proposed interest rate to be paid on account of their alleged claims. Whether the rate is ultimately determined to be the 4.25% per annum proposed by the Proponents, the 12% per annum suggested by the Desmarais Parties or something in between, the reorganized Debtor will have sufficient funds to make the monthly payments.

[3] At the confirmation hearing, the Proponents will submit appropriate evidence to demonstrate the feasibility of the Amended Plan.

b. The operating projections for the Reorganized Debtor were prepared by Lance Alstodt in consultation with Francisco Silva, the Debtor's Chief Scientist and VP of R&D, with Mark Weinreb, the Debtor's CEO reviewing and commenting on same. The projections contained in the Disclosure Statement for normal business operations and for the projected Phase 2 Trial costs were prepared after reviewing existing projections and focusing on areas where costs could be eliminated or reduced; they therefore reflect the elimination of certain expenses that were deemed unnecessary to the Reorganized Debtor's post-confirmation operations. The operating projections are reasonable and are consistent with the Debtor's operating expenses during this chapter 11 case.

c. Mr. Alstodt was previously the Debtor's Executive Vice President and Chief Strategy Officer, and is familiar with the Debtor's operations and programs. He has over 25 years of experience in operations, strategy and mergers and acquisitions. He is also the Founder and CEO of MedVest Consulting Corporation ("MedVest"), an advisory and capital firm focused exclusively within the healthcare sector, focusing on growth and channel strategy, strategic planning, merger and acquisition support and investor activities. Prior to MedVest, Mr. Alstodt was a career investment banker with over 20 years of experience in healthcare investment banking, including mergers and acquisitions.

d. At the time of the filing of its Chapter 11 petition, the Debtor was out of cash, had in excess of $15 million in debt on its balance sheet and had a loan payment due to the Desmarais Parties which it could not pay. Upon confirmation, the Reorganized Debtor will have a significantly stronger balance sheet, will optimize its use of debt and will rely upon a substantial cash position to execute its operating plan. In the opinion of Mr. Alstodt, upon emerging from chapter 11 and continuing as a publicly traded company, the Reorganized Debtor will be adequately positioned to raise the funds necessary to pursue its *ThermoStem* and BRTX-100 programs. Furthermore, Mr. Alstodt has previewed the financial profile of the *pro forma* entity with several reputable financial institutions that focus on capital raising for emerging growth biopharma companies. The firms have all provided Mr. Alstodt with confidence that the Reorganized Debtor will be a more attractive investment candidate to their institutional clients for the purposes of raising capital than past times when the company has attempted to utilize these sources of capital markets.

      e. The Amended Plan does not mandate that the Reorganized Debtor must raise the funds to pursue the *ThermoStem* or BRTX-100 programs at any given time and does not mandate that the Reorganized Debtor must pursue either of the *ThermoStem* or BRTX-100 programs. Auctus has committed to provide additional funding of $3.5 million, less the DIP Obligation, as indicated above. If, for any reason, the Reorganized Debtor experiences any delays in raising the funds necessary to pursue one or more of its programs, the Reorganized Debtor will then be able to operate for an extended period of time while it determines which programs to pursue and raises any necessary funds.

      f. To the extent sufficient funds are not raised in the near term, one or both of the *ThermoStem* or BRTX-100 programs can also simply be delayed while the Debtor seeks to raise the necessary funds. This is the typical method by which companies in the Debtor's market raise capital for trials, with each stage of fund raising being dependent upon the success of the prior stage.

      g. Assuming a successful completion of the Phase 2 Trial, which is a risk that any company like the Debtor must endure, the Reorganized Debtor will then be in a favorable position to raise additional capital to go through a Phase 3 Trial.

9.     For the foregoing reasons, the Amended Plan is feasible.

### III. The Leak Out Restriction is Appropriate and is in Good Faith

10.     Without any support or evidence whatsoever, the Desmarais Parties assert that the Amended Plan violates 11 U.S.C. § 1129(a)(3) because the Secured Convertible Plan Notes granted to Auctus and to other creditors who contribute funds to the Debtor under the Amended Plan are not subject to the Leak Out Restriction set forth in Section 1.48 of the Amended Plan.[4] Based on that, the Desmarais Parties contend that this "raises the prospect that that the Plan is nothing more than a penny stock play by Auctus" and they suggest that the Court should impose

---

[4] The Proponents do not understand the Desmarais Parties' contention that Auctus is somehow receiving two Secured Convertible Plan Notes with respect to the same DIP Obligation, but will make any amendment that may be necessary to clarify that it is not.

a three year Leak Out Restriction on any stock issued to Auctus and to other third parties that provide funding to the Debtor.

11. Not only are these unfounded assertions by the Desmarais Parties wholly without merit, they have no basis in law or fact. It is actually incredulous that Desmarais, after declining the opportunity to try to acquire the Debtor's assets through a chapter 11 plan process, is now throwing baseless accusations at the parties who have been providing DIP financing to the Debtor and who have committed to funding the Reorganized Debtor's future operations. Furthermore, as an alleged secured creditor, the Leak Out Restriction has absolutely no impact on the Desmarais Parties, raising serious questions as to why Desmarais would even make such allegations. Perhaps most importantly, however, except for the Secured Convertible Plan Note that will be exchanged for the DIP Obligation under 11 U.S.C. § 1145, all other Secured Convertible Plan Notes and any stock or Plan Warrants that will be issued in connection with any funding of the Amended Plan cannot, under applicable law, be converted or sold, as the case may be, until at least six months after the Effective Date. Even then, under Rule 144, such stock could not be sold unless and until the Reorganized Debtor is current with its SEC filings. Accordingly, the treatment being afforded to the parties that are subject to the Leak Out Restriction (creditors receiving shares in the Reorganized Debtor and parties receiving Convertible Plan Notes) are receiving **more favorable treatment** than the recipients of Secured Convertible Plan Notes. The Leak Out Restriction that are imposed on them are phased over periods of time that are no greater than six months.

12. Based on the foregoing, the allegations of the Desmarais Parties related to the Leak Out Restriction and alleged lack of good faith should be overruled.

**IV. The Releases in the Amended Plan are Appropriate**

13.     The Desmarais Parties' objection to the Debtor releases in Section 9.3(a) of the Amended Plan lacks merit.  The Objection continues to discuss releases by third parties when none exist in the Amended Plan.  As previously explained in the Reply [ECF Doc. No. 93] (the "Disclosure Statement Reply") to Desmarais' objection to the Disclosure Statement, the only claims that creditors are required to release under the Amended Plan are claims they hold directly as against the Debtor, the Debtor's bankruptcy estate (the "Estate"), the Estate's assets, the Reorganized Debtor, and the Reorganized Debtor's assets, which they are doing in exchange for what they receive under the Amended Plan.  *See* Disclosure Statement Reply ¶ 15; Amended Plan ¶ 9.3(b).  Accordingly, this Amended Plan does not compel any third party to release any direct claims they may hold against other third parties.

14.     Second, the Desmarais Parties do not clearly state any basis for why the Debtor release of claims in Section 9.3(a) of the Amended Plan is improper.  The most that the Desmarais Parties offer is that "[t]he Amended Disclosure Statement offers no legal basis for the grant of wholesale third party releases to Auctus or its current officers, directors, agents and professionals from any claim or action, or for the third-party releases of the Debtor's current officers, directors and representatives from any act or omission that is not determined in a final order to have risen to the level of gross negligence or willful misconduct."  Obj. ¶ 39.  The Proponents and the Court are left to infer what the Desmarais Parties cryptically imply to be a blanket objection to the Debtor releasing any claims.

15.     Critically, the Desmarais Parties are the **only** voting parties to vote against the Amended Plan and the **only** parties in interest to assert any objection against the language and scope of the Debtor's releases in Section 9.3(a) of the Amended Plan.  Not a single other creditor or shareholder has indicated any possible issue with the Debtor's releases as currently drafted.

Likewise, the Desmarais Parties have not offered any reason any of those releases for the Released Parties negatively affects him or reduces any distribution he might receive under the Amended Plan. Such position also wholly ignores the substantial contributions made to the reorganization process, i.e., the new money Auctus is putting into the Debtor as working capital, and the work of the Debtor's post-petition officers and directors that reviewed and negotiated Auctus' proposed plan. Accordingly, there is no basis to disapprove the Debtor's release of the Released Parties generally.

16. Regardless, with regard to the Debtor's release of possible alleged claims against Auctus or its current officers, directors, agents and professionals (collectively, the "Auctus Parties"), in reviewing the current release language and discussing same with counsel to Auctus, the Proponents have agreed to include the Auctus Parties in the release carve-out at the end of Section 9.3 of the Amended Plan. Accordingly, the Proponents propose to modify the Section 9.3(a) release language through the proposed confirmation order by revising that language as follows:

> **ORDERED**, that Section 9.3(a) of the Amended Plan is amended and superseded with the following language:
>
> **Debtor Releases. NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR, THE DEBTOR AND ITS CURRENT AND FORMER AFFILIATES AND REPRENTATIVES AND THE ESTATE SHALL BE DEEMED TO HAVE PROVIDED A FULL, COMPLETE, UNCONDITIONAL AND IRREVOCABLE RELEASE TO (i) THE DEBTOR'S CURRENT OFFICERS, DIRECTORS, AGENTS AND PROFESSIONALS AND (ii) AUCTUS FUNDS, LLC, AND ITS CURRENT OFFICERS, DIRECTORS, AGENTS AND PROFESSIONALS (EACH, A "RELEASED PARTY," AND COLLECTIVELY, THE "RELEASED PARTIES") AND EACH SUCH RELEASED PARTY SO RELEASED SHALL BE DEEMED RELEASED BY THE DEBTOR AND ITS**

**AFFILIATE AND REPRESENTATIVES AND THE ESTATE FROM ANY AND ALL CLAIMS, CAUSES OF ACTION AND ANY OTHER DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, REMEDIES AND LIABILITIES WHATSOEVER, WHETHER ACCRUED OR UNACCRUED, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING BEFORE THE EFFECTIVE DATE, AS OF THE EFFECTIVE DATE OR ARISING THEREAFTER, IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF STATUTES (INCLUDING BUT NOT LIMITED TO THE FEDERAL OR STATE SECURITIES LAWS), OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY TO THE DEBTOR, INCLUDING, WITHOUT LIMITATION, THOSE THAT THE DEBTOR WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT OR THAT ANY HOLDER OF A CLAIM OR EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT FOR OR ON BEHALF OF THE DEBTOR OR THE ESTATE, INCLUDING WITHOUT LIMITIATION THOSE IN ANY WAY RELATED TO THE CHAPTER 11 CASE OR THE PLAN; PROVIDED, HOWEVER, THAT THE FOREGOING RELEASE SHALL NOT PROHIBIT THE DEBTOR OR THE ESTATE FROM ASSERTING ANY AND ALL DEFENSES AND COUNTERCLAIMS IN RESPECT OF ANY DISPUTED CLAIM ASSERTED BY ANY RELEASED PARTIES; PROVIDED FURTHER, THAT THE FOREGOING PROVISIONS OF THIS SECTION 9.3(a) SHALL HAVE NO EFFECT ON THE LIABILITY OF THE <u>RELEASED PARTIES</u> THAT RESULTS FROM ANY ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE OR WILLFUL MISCONDUCT. NOTWITHSTANDING THE FOREGOING, THE DEBTOR DOES NOT RELEASE ANY AVOIDANCE ACTIONS TO AVOID ANY PERFECTION OF ANY SECURITY INTERESTS IN AND/OR LIENS AGAINST ANY OF THE DEBTOR'S TANGILBE AND/OR INTANGIBLE PROPERTY GRANTED BY THE DEBTOR WHICH PERFECTION ALLEGEDLY OCCURRED WITHIN ONE YEAR OF THE PETITION DATE.**

17. Based on the foregoing, as modified, the Court should overrule the Desmarais Parties' objection to the Debtor's releases of the Released Parties.

18. Accordingly, based on the foregoing, the Proponents submit that the Objection should be overruled in its entirety and the Plan should be confirmed.

**WHEREFORE,** it is respectfully requested that, based on the foregoing, the Court enter an Order overruling the Objection, confirming the Plan, and granting such other, further, and different relief as to the Court seems just, proper and equitable.

Dated: East Meadow, New York
   September 8, 2020

              **CERTILMAN BALIN ADLER & HYMAN, LLP**
              Counsel to the Debtor and Debtor in Possession


              By: /s/Robert D. Nosek_____
                 Richard J. McCord, Esq.
                 Robert D. Nosek, Esq.
                 90 Merrick Avenue
                 East Meadow, New York 11554
                 Phone: (516) 296-7000

Dated: Boston, Massachusetts
   September 8, 2020

              **MURPHY & KING, P.C.**
              Counsel to Auctus Fund, LLC


              By: /s/William R. Moorman, Jr._____ __
                 Harold B. Murphy, Esq.
                 William R. Moorman, Jr., Esq.
                 D. Ethan Jeffery, Esq.
                 One Beacon Street
                 Boston, MA  02108
                 Phone: (617) 423-0400
                 wmoorman@murphyking.com